UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

LUIS G. SERRANO,

                       Plaintiff,      **No. 1:15-cv-01084-MAT**
                                                **DECISION AND ORDER**
        -vs-

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                       Defendant.

---

**I. Introduction**

Represented by counsel, Luis G. Serrano ("Plaintiff") instituted this action pursuant to Title XVI of the Social Security Act ("the Act"), seeking review of the final decision of the Acting Commissioner of Social Security ("the Commissioner")[1] denying his application for Supplemental Security Income ("SSI"). The Court has jurisdiction over the matter pursuant to 42 U.S.C. §§ 405(g), 1383(c).

**II. Procedural Status**

Plaintiff protectvely filed for SSI on March 12, 2012, alleging disability due to acute bronchial asthma, attention deficit hyperactivity disorder ("ADHD"), disruptive behavior disorder, and emotional and learning problems. The application was denied on September 10, 2012, and Plaintiff filed a written request

---

[1] Nancy A. Berryhill became the Acting Commissioner of Social Security on January 20, 2017. Pursuant to Rule 25(d)(1) of the Federal Rules of Civil Procedure, Nancy A. Berryhill should be substituted, therefore, for Acting Commissioner Carolyn W. Colvin as Defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

for a hearing. On November 19, 2012, Administrative Law Judge Timothy J. Trost ("the ALJ") conducted a hearing at which Plaintiff appeared pro se and testified. (T.33-48).[2] The ALJ did not call any witnesses.

On May 2, 2014, the ALJ issued an unfavorable decision. (T.9-32). Plaintiff's request for review by the Appeals Council was denied on November 2, 2015, making the ALJ's decision the final decision of the Commissioner. Plaintiff timely commenced this action.

**III. The ALJ's Decision**

At the first step of the sequential evaluation, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since the March 12, 2012 application date. At step two, the ALJ found that Plaintiff had the following severe impairments: history of bilateral wrist fractures requiring surgical repair, with residual bilateral wrist pain; history of left elbow fracture requiring surgical repair, with residual elbow pain; and dysthymic disorder. (T.17). At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment found in 20 C.F.R. Pt. 404, Subpt. P, App. 1 ("the Listings"). (T.19).

The ALJ next assessed Plaintiff as having the residual functional capacity ("RFC") to perform sedentary work, with certain

---

[2] Citations in parentheses to "T." refer to pages from the certified transcript of the administrative record.

nonexertional limitations due to his mental impairments. (T.20-21). In particular, the ALJ found that Plaintiff could learn, remember, and carry out simple job functions; could concentrate on and attend to the duties of a job with occasional supervision; could make appropriate employment-related judgments; could respond to supervision and coworkers in usual job settings; and could deal with ordinary job-related stress.

At the fourth step, the ALJ determined that Plaintiff had no past relevant work. (T.26).

At the fifth step, the ALJ considered Plaintiff's age (20 years-old on the application date), his limited education (completion of 10th or 11th grade), his ability to communicate in English, and his RFC. The ALJ determined that the transferability of job skills was not material, because the Medical-Vocational Guidelines, 20 C.F.R. Pt. 404, Subpt. P, App'x 2 ("the Grids"), supported a finding of "not disabled" whether or not Plaintiff had transferable job skills. (T.26). The ALJ then found that Plaintiff's additional limitations had little or no effect on the occupational base for unskilled sedentary work, and that Grids Rule 201.24 directed a finding of "not disabled." (T.27).

**IV. Scope of Review**

A district court may set aside the Commissioner's determination that a claimant is not disabled only if the factual findings are not supported by "substantial evidence" or if the decision is based on legal error. 42 U.S.C. § 405(g); see also

-3-

Green-Younger v. Barnhart, 335 F.3d 99, 105-06 (2d Cir. 2003). The district court must accept the Commissioner's findings of fact, provided that such findings are supported by "substantial evidence" in the record. See 42 U.S.C. § 405(g) (the Commissioner's findings "as to any fact, if supported by substantial evidence, shall be conclusive"). "Substantial evidence means 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Shaw v. Chater, 221 F.3d 126, 131 (2d Cir. 2000) (quotation omitted). The reviewing court nevertheless must scrutinize the whole record and examine evidence that supports or detracts from both sides. Tejada v. Apfel, 167 F.3d 770, 774 (2d Cir. 1998) (citation omitted). "The deferential standard of review for substantial evidence does not apply to the Commissioner's conclusions of law." Byam v. Barnhart, 336 F.3d 172, 179 (2d Cir. 2003) (citing Townley v. Heckler, 748 F.2d 109, 112 (2d Cir. 1984)).

**V. Discussion**

   **A. Failure to Properly Address Plaintiff's Borderline Intellectual Functioning at Step Two (Plaintiff's Point I)**

Plaintiff contends that the ALJ failed to find, at step two, that his "severe" impairments included borderline intellectual functioning. Plaintiff also argues that he meets the requirements of Listing 12.05(C), and the ALJ therefore should have found him disabled at step three of the sequential evaluation. The Commissioner responds that the ALJ did not err at step two because

-4-

various medical opinions supported a finding that Plaintiff's intellectual functioning did not significantly impact of his ability to perform work-related functions and therefore was not severe. The Commissioner also contends that Plaintiff does not meet Listing 12.05(C) because there is no evidence that he experienced deficits in adaptive functioning prior to age 22.[3]

At step two of the sequential evaluation process, the ALJ must determine whether the claimant has a "severe impairment" that "significantly limits [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.920(a)(4)(ii), (c). Here, the ALJ concluded that "any allegation of learning disability or borderline intelectual functioning" was "non-severe, since it causes no more than a slight abnormality and has no more than a minimal effect on [Plaintiff]'s ability to do basic mental work activities." (T.18). The ALJ noted that a July 13, 2010 consultative evaluation by Ernesto L. Perdomo, Ph.D., "issued in connection with a prior application for benefits, proffered diagnoses of borderline intellectual functioning and learning

---

[3] According to Listing 12.05's introductory paragraph, "[i]ntellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period." 20 C.F.R. Pt. 404, Subpt. P., App. 1, § 12.05. "If [an] impairment satisfies the diagnostic description in the introductory paragraph [of § 12.05] *and* any one of the four sets of criteria [in Paragraphs A through D, the ALJ] will find that [the] impairment meets the Listing." 20 C.F.R. Pt. 404, Subpt. P., App'x. 1, § 12.00 (emphasis supplied). Paragraph C of Listing 12.05 requires "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function." Id., § 12.05(C). Before the ALJ reaches the criteria in Paragraphs A, B, C, or D, the claimant must meet the criteria in § 12.05's introductory paragraph, i.e., he must have (1) cognitive limitations and deficits in adaptive functioning, (2) initially manifesting themselves before age 22. Talavera v. Astrue, 697 F.3d 145, 153 (2d. Cir. 2012).

disability."[4] (Id. (citing Hearing Exhibit ("Ex.") 2F)). However, the ALJ observed, "a more recent psychological evaluation from August 2012 [by consultative psychologist Dr. Renée Baskin] issued in connection with the current application for benefits, noted intellectual functioning estimated to be in the borderline range, but proffered no diagnosis of borderline intellectual functioning or learning disability[.]" (Id. (citing Ex. 7F)).

It is true that Dr. Baskin did not list borderline intellectual functioning as a separate diagnosis, but she did observe that Plaintiff's "[i]ntellectual functioning is estimated to be in the borderline range." (T.268). The ALJ's focus on whether there was an "official" diagnosis listed misrepresents the gist of Dr. Baskin's findings. Moreover, Dr. Baskin's estimation is supported by the results of formal intelligence testing administered by consultative psychologist Dr. Perdomo in July of 2010. Specifically, Dr. Perdomo noted, Plaintiff achieved the following test scores, all of which had a 95-percent confidence interval between a standard index of 67 to 79: (1) verbal comprehension standard index of 72, which placed him at the 3rd percentile rank; (2) perceptual reasoning standard index of 75,

---

[4] Dr. Perdomo diagnosed ADHD, combined type and conduct disorder, not otherwise specified ("NOS") on Axis I; and borderline intellectual functioning and learning disability, NOS, affecting reading, math, and writing on Axis II. On Axis III, there was no significant medical history reported. On Axis IV, Dr. Perdomo noted that "[p]sychosocial stressors appear to be severe due to learning disabilities, being in a special education program full time, and conduct disorder." Finally, Dr. Perdomo indicated on Axis V that Plaintiff's Global Assessment of Functioning ("GAF") "appeared to be around 50, indicating significant symptoms. . . ." (T.238).

which placed him at the 5th percentile rank; (3) working memory standard index of 66, which placed him at the 1st percentile rank; processing speed standard index of 84, which placed him at the 14th percentile rank; (4) full scale IQ score of 70, which placed him in the 2nd percentile rank of the population according to the Wechsler Adult Intelligence Scale, Fourth Edition ("WAIS-IV"). (T.232). Dr. Perdomo concluded that Plaintiff's "[o]verall functioning is within the borderline range of intellectual functioning." (T.233). Dr. Perdomo noticed "[s]ignificant deficits in areas dealing with attention, concentration, mental control and reasoning[,]" and observed that his "protocol [was] significant for learning disabilities." (Id.). Dr. Perdomo also noted that earlier education records included an IQ score of 60. (T.236). In a related psychological assessment, Dr. Perdomo opined that Plaintiff

> has significant learning disabilities. He functions within the borderline range of intellectual. His condition is such that he needs a special education program in school. His condition may affect his ability to function effectively at a job.

(T.238).

The ALJ discounted the results of the formalized intelligence testing administered by Dr. Perdomo in favor of Dr. Baskin's opinion that Plaintiff has "only mildly impaired" attention and concentration, and recent and remote memory skills, based on the cursory cognitive testing she performed at the evaluation, such as serial 3's (which Plaintiff was unable to do) and reciting digits backwards and forwards. However, the ALJ omitted to include

Dr. Baskin's accompanying statement that Plaintiff's inability to perform some of these tests was "due to limited intellectual functioning." (T.267, 268). The ALJ essentially found, without a substantial basis in the evidence, that Dr. Baskin's brief consultative examination during which she did not administer any standardized intelligence testing, invalidated the statistically valid intelligence testing results obtained by Dr. Perdomo only two years previously. The ALJ cherry-picked a couple statements from Dr. Baskin's report, and mischaracterized her observation about Plaintiff's intellectual functioning to reject Dr. Perdomo's repeated findings that Plaintiff has significant deficits in his cognitive functioning. As courts in this Circuit have repeatedly noted, "[i]t is plainly improper for an ALJ to cherry-pick evidence that supports a finding of not-disabled while ignoring other evidence favorable to the disability claimant." Starzynski v. Colvin, No. 1:15-CV-00940(MAT), 2016 WL 6956404, at *3 (W.D.N.Y. Nov. 29, 2016) (citing Trumpower v. Colvin, No. 6:13-cv-6661(MAT), 2015 WL 162991, at *16 (W.D.N.Y. Jan. 13, 2015) ("While an ALJ is entitled to resolve conflicts in the evidentiary record, [he or] she 'cannot pick and choose evidence that supports a particular conclusion.'") (quoting Smith v. Bowen, 687 F. Supp. 902, 904 (S.D.N.Y. 1988); citations omitted).

The ALJ then noted that Plaintiff "has worked at least in some capacity" as evidence that he does not have borderline intellectual functioning or learning disabilities. This statement apparently is

based on wage records showing some earnings; however, the ALJ later found in his decision that Plaintiff had no past relevant work. Most critically, the ALJ did not explore the type of job Plaintiff did when he was employed "in at least some capacity," such as the exertional and non-exertional requirements of that work. Nor did the ALJ define what he meant by "some capacity." It is clear, based on the record, that it was not full-time employment or the equivalent. In short, the ALJ's reasoning is speculative and based on an undeveloped record.

The ALJ also asserted, as a reason for finding that Plaintiff does not have borderline intellectual functioning, that he is "bilingual, having demonstrated the ability to speak English and Spanish during the hearing." This rationale is specious and merits no further discussion. As the final reason for his step two finding, the ALJ stated that Plaintiff "was able to understand and answer all questions competently and intelligently during the hearing." This amounts to the ALJ substituting his own opinion for that of a qualified, acceptable medical source. Moreover, the record is at least equivocal as to Plaintiff's level of comprehension. As noted above, Plaintiff appeared without representation at his November 19, 2013 hearing, but it is unclear whether he fully understood what was occurring or what rights he had just waived. For example, in response to the ALJ's question about whether he had any objection to taking an oath, Plaintiff responded, "To vote?" (T.37). It was not clear that Plaintiff had

reviewed his file at all, which the ALJ acknowledged, saying, "I don't know if you've had a chance to see your file, but do you think that there's anything in there you would not want me to see?" Plaintiff's answer—"No problem"-was not really responsive to the question. (T.38). Further, Plaintiff admitted that he did not read the hearing notice. (T.38).

While the ALJ is solely responsible for weighing the evidence in the record and resolving any conflicts, "[m]ischaracterizing or ignoring evidence of [a claimant]'s alleged disability also does not satisfy a substantial evidence standard." Brown v. Colvin, No. 15-CV-4823(RLE), 2016 WL 5394751, at *14 (S.D.N.Y. Sept. 27, 2016) (citing Ericksson v. Comm'r of Soc. Sec., 557 F.3d 79, 82-84 (2d Cir. 2009); Kohler v. Astrue, 546 F.3d 260, 269 (2d Cir. 2008)). The ALJ's step two finding is legally erroneous and not based on substantial evidence. The Court cannot say that this error at step two was harmless because it infected the remainder of the sequential evaluation. Remand accordingly is required for a new step-two severity determination.

### B. Plaintiff's Other Arguments

The error at step two, discussed above, is a sufficient basis for reversal of the Commissioner's decision and remand for further proceedings. Because, on remand, the ALJ will have to perform a new sequential evaluation, the Court need not address Plaintiff's remaining arguments, which concern later steps in the evaluation.

**V. Conclusion**

For the foregoing reasons, the Court finds that the Commissioner's determination was erroneous as a matter of law, and unsupported by substantial evidence. Accordingly, it is reversed. Defendant's Motion for Judgment on the Pleadings is denied, and Plaintiff's Motion for Judgment on the Pleadings is granted to the extent that the matter is remanded for further administrative proceedings consistent with this Decision and Order.

**SO ORDERED.**

**S/Michael A. Telesca**

HONORABLE MICHAEL A. TELESCA
United States District Judge

Dated: February 21, 2018
Rochester, New York